NS:DEL/ALK
F. #2020R00491

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

YAKOV MOROZ,
    also known as "Koby"
    and "Yasha,"

KRISTY MAK,
ANDRE PRINCE,
    also known as "Allen
    Parks" and "Aaron," and
KRISTEN SMITH,
    also known as "Sabrina,"

    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**FILED**
5:27 pm, Apr 09, 2021
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SUPERSEDING
INDICTMENT

1:20-cr-00342-MKB

Cr. No. 20-342 (S-1) (MKB)
(T. 18, U.S.C., §§ 981(a)(1)(C),
1001(a)(3), 1349, 2 and 3551 et seq.;
T. 21, U.S.C., § 853(p); T. 28, U.S.C.,
§ 2461(c))

THE GRAND JURY CHARGES:

INTRODUCTION

    At all times relevant to this Superseding Indictment, unless otherwise indicated:

    A.    <u>The Defendants</u>

    1.    The defendant YAKOV MOROZ, also known as "Koby" and "Yasha," was a resident of Brooklyn, New York and was the sole owner, officer and operator of several affiliated companies that were engaged in the interstate transportation of household goods and property by commercial motor carrier ("motor carrier"), including but not limited

to C And D Moving Inc., Compass Relocation Inc., Cross Country Moving and Storage Inc., First Class Moving and Storage, Green Movers of America Inc., Great Movers Inc., New City Movers Inc. and American Choice Van Lines LLC (collectively, the "Fraudulent Moving Companies").

3. The defendant KRISTY MAK was a resident of Florida and was employed by the defendant YAKOV MOROZ as a sales manager for the Fraudulent Moving Companies, including but not limited to Great Movers Inc. and New City Movers Inc. MAK worked for the Fraudulent Moving Companies from approximately 2017 to 2020. As a sales manager, MAK managed the sales representatives and assisted in running the day-to-day operations of the Fraudulent Moving Companies. At times, MAK worked from the Fraudulent Moving Companies' office in Fort Lauderdale, Florida.

4. The defendant ANDRE PRINCE, also known as "Allen Parks" and "Aaron," was a resident of Florida and was employed by the defendant YAKOV MOROZ as a sales representative for the Fraudulent Moving Companies, including but not limited to Great Movers Inc. and New City Movers Inc. PRINCE worked for the Fraudulent Moving Companies from approximately 2016 to 2020. As a sales representative, PRINCE interacted

directly with customers and potential customers. PRINCE spoke to customers and potential customers using false names, including the names "Allen Parks" and "Aaron." At times, PRINCE worked from the Fraudulent Moving Companies' office in Fort Lauderdale, Florida.

   5. The defendant KRISTEN SMITH, also known as "Sabrina," was a resident of Florida and was employed by the defendant YAKOV MOROZ as a customer service representative for the Fraudulent Moving Companies, including but not limited to Great Movers Inc. and New City Movers Inc. SMITH worked for the Fraudulent Moving Companies from approximately 2016 to 2020. As a customer service representative, SMITH interacted directly with customers and assisted in running the day-to-day operations of the Fraudulent Moving Companies. SMITH spoke to customers and potential customers using false names, including the name "Sabrina." At times, SMITH worked from the Fraudulent Moving Companies' office in Fort Lauderdale, Florida.

  B. The Fraudulent Moving Companies

   6. Cross Country Moving and Storage Inc. ("Cross Country Moving and Storage") maintained an office in Brooklyn, New York and was advertised as a motor carrier engaged in the shipment of household goods, operating under United States Department of Transportation ("USDOT") number 829126, beginning in or about 2017. A USDOT number was a unique identifier, described in greater detail below. The defendant YAKOV MOROZ had control over Cross Country Moving and Storage's operations and bank accounts.

   7. First Class Moving and Storage, also known as "Saba Gabi Inc.," maintained an office in Brooklyn, New York and was advertised as a motor carrier engaged

in the shipment of household goods, operating under USDOT number 1819020, beginning in or about 2018. The defendant YAKOV MOROZ had control over First Class Moving and Storage's operations and bank accounts.

8. Green Movers of America Inc. ("Green Movers of America"), also known as "Dads LLC," maintained an office in Brooklyn, New York and was advertised as a motor carrier engaged in the shipment of household goods, operating under USDOT number 2547870, beginning in or about 2019. The defendant YAKOV MOROZ had control over Green Movers of America's operations and bank accounts.

9. Great Movers Inc., also known as "Great Moving" and "Great Moving USA" ("Great Movers"), maintained an office in Brooklyn, New York and was advertised as a motor carrier engaged in the shipment of household goods, operating under USDOT number 2430969, beginning in or about 2019. The defendant YAKOV MOROZ had control over Great Movers' operations and bank accounts.

10. New City Movers Inc. ("New City Movers") maintained an office in Brooklyn, New York and was advertised as a motor carrier engaged in the shipment of household goods, operating under USDOT number 2365170, beginning in or about 2020. The defendant YAKOV MOROZ had control over New City Movers' operations and bank accounts.

11. American Choice Van Lines LLC ("American Choice Van Lines") maintained an office in Brooklyn, New York and was advertised as a motor carrier engaged in the shipment of household goods, operating under USDOT number 1732844, beginning in or about 2020. The defendant YAKOV MOROZ had control over American Choice Van Lines' operations and bank accounts.

12. Movers Consulting Inc. ("Movers Consulting") and Interstate Advisor performed certain business operations for the Fraudulent Moving Companies, including but not limited to employee payroll, the rental of office space and the purchase of website domains. Movers Consulting and Interstate Advisor maintained a shared office in Brooklyn, New York. The defendant YAKOV MOROZ had control over the operations and bank accounts of Movers Consulting and Interstate Advisor.

C. Federal Motor Carrier Safety Laws and Regulations

(i) Registration Requirements

13. The Federal Motor Carrier Safety Administration ("FMCSA") was an agency of the USDOT. Its primary mission was to reduce fatalities and injuries involving commercial motor vehicles. FMCSA adopted regulations governing motor carriers, including regulations requiring them to be properly licensed, insured, maintained and operated.

14. Motor carriers operating in interstate commerce were required to register with FMCSA and obtain a USDOT number, pursuant to Title 49, United States Code, Sections 13901-13904. A USDOT number was a unique identifier that aided FMCSA in collecting and monitoring a motor carrier's safety record and other information, including but not limited to audits, compliance reviews, crash investigations and inspections. Depending on the nature of the business of the motor carrier, many motor carriers operating in interstate commerce, including those engaged in the shipment of household goods, were also required to obtain interstate operating authority from the USDOT.

15. To obtain a USDOT number and operating authority, motor carriers were required to complete and submit to FMCSA, under penalty of perjury, a Form

MCSA-1. Form MCSA-1 required an applicant to provide, among other things, the following information: (i) the motor carrier's business address; (ii) the motor carrier's insurance information; (iii) information regarding the motor carrier's compliance with USDOT safety regulations; and (iv) the motor carrier's relationship and affiliation with any other motor carrier within the preceding three years.

16. In particular, pursuant to Title 49, Code of Federal Regulations, Section 385.1003, a motor carrier was required to identify other motor carriers with common ownership, management, control or familial relationship, which are known as "reincarnated" or "affiliated" motor carriers. Title 49, Code of Federal Regulations, Section 385.1005 prohibited two or more motor carriers from using common ownership, management, control or familial relationship to avoid compliance with legal requirements or otherwise conceal non-compliance or a history of non-compliance.

17. According to FMCSA's USDOT Number Requirement Policy, MC-RS-2019-0001.1 (the "FMCSA Policy"), a corporation, partnership or other business organization could retain its USDOT number when there was a change in company officials, address or other demographic information, provided that the corporation, partnership or other business organization continued operations as the same legal person or entity. However, a new USDOT number was required, among other reasons, if the corporation, partnership or other business organization did not continue operations as the same legal person or entity. According to the FMCSA Policy, sole proprietorships that changed ownership were prohibited from retaining the same USDOT number.

18. Pursuant to Title 49, Code of Federal Regulations, Section 390.19T, a motor carrier was also required to submit Form MCS-150 (Motor Carrier Identification

7

Report) every other year and to report any material changes, such as a change in its ownership, within 30 days.

        (ii)    <u>Customer Protection Requirements</u>

        19.    In addition to their obligations under the FMCSA's registration requirements, companies engaged in the transportation of household goods in interstate commerce were subject to federal regulations set forth in Title 49, Code of Federal Regulations, Section 375.

        20.    A company engaged in the transportation of household goods was required to provide customers with a written estimate of the charges for transportation and all related services based on a telephonic or physical inventory of the goods to be shipped, and to indicate whether the estimate was binding or non-binding.

        21.    A binding estimate was an agreement made prior to transportation that guaranteed the total cost of the shipment based on the quantities and services listed in the estimate. For binding estimates, a company was required to deliver the household goods, as contracted, upon full payment of the original estimate amount. Any costs associated with the shipment of additional household goods or services that were not identified in the binding estimate were permitted to be billed after the goods were delivered, pursuant to Title 49, Code of Federal Regulations, Section 375.403.

        22.    For non-binding estimates, the final charges were based on the actual weight or volume of the shipment, the services provided and the tariff provisions in effect. Under Title 49, Code of Federal Regulations, Section 375.703(b), the final charges for a shipment involving a non-binding estimate were not permitted to be increased above the initial estimate by more than 10 percent.

D.    The Scheme to Steal Customers' Money

23.    In or about and between January 2017 and August 2020, the defendants YAKOV MOROZ, ███████ KRISTY MAK, ANDRE PRINCE and KRISTEN SMITH, together with others, defrauded customers and potential customers (the "victims") of the Fraudulent Moving Companies by first misrepresenting the estimated charges for moving services, and then forcing victims to pay additional money—at times, more than double the original estimate—by refusing to return, and threatening to sell, their belongings if the additional money was not paid.

24.    The defendant YAKOV MOROZ operated the Fraudulent Moving Companies and directed the named defendants and other employees and contractors, including sales representatives, operations/logistics representatives and customer service representatives. The sales representatives included the defendants KRISTY MAK and ANDRE PRINCE, who contacted victims of the Fraudulent Moving Companies and misrepresented the estimated charges for moving services in order to persuade the victims to contract with the Fraudulent Moving Companies. ████████████████████████

████████████████████████████████████████████████

████████████████████ The customer service representatives included the defendant KRISTEN SMITH, who contacted victims after representatives of the Fraudulent Moving Companies had demanded additional money for delivery.

25.    As part of the scheme and in furtherance of the scheme, the defendants YAKOV MOROZ, ███████ KRISTY MAK, ANDRE PRINCE and KRISTEN SMITH, together with others, falsely represented to the public that the Fraudulent Moving

Companies were honest and reliable. For instance, the defendant YAKOV MOROZ, together with others, purchased a purportedly unrelated website domain, top5movers.org, on which they advertised New City Movers and American Choice Van Lines as "trusted interstate movers." The website falsely claimed New City Movers had "over 70 years of experience" and American Choice Van Lines had been in business for 23 years, whereas, in fact, MOROZ had established New City Movers and American Choice Van Lines in or about April and June 2020, respectively. The defendant YAKOV MOROZ, together with others, also created and caused to be created Better Business Bureau ("BBB") business profiles for the Fraudulent Moving Companies that falsely stated the number of years the companies had been operated by the defendants and the companies' ratings. The defendants, together with others, used these BBB profiles to convince victims to contract with the Fraudulent Moving Companies. For instance, on or about September 12, 2019, PRINCE sent a customer an image of the BBB profile for Great Movers falsely stating that the company had been in business for 73 years and had an "A+" rating, whereas, in fact, MOROZ established Great Movers in or about September 2019, and an entity needed to operate for at least six months before receiving a BBB rating.

26. The defendants, together with others, also induced victims to hire the Fraudulent Moving Companies by making false representations that the Fraudulent Moving Companies offered competitive rates for premium interstate moving services. To the contrary, among other things, the defendants, together with others, (i) quoted estimated charges for moving services that they had no intention of honoring; (ii) misrepresented the companies' physical locations; (iii) used false names to conceal their own true identities; (iv) lied about the level of skill and experience of the movers who would transport the

victims' goods; and (v) falsely promised various quality control measures that would be used in transporting their goods.

27. After a victim's household goods had been loaded into trucks, but before the goods were delivered, the defendants and persons acting at their direction demanded—in person, by email and by telephone—additional money from the victims, in excess of the original agreed-upon cost.

28. When the victims refused to pay the additional money demanded in excess of the original agreed-upon cost, the defendants and persons acting at their direction at times threatened to keep the victims' belongings in storage and to charge the victims the costs of the storage. The defendants and persons acting at their direction also threatened, at times, to sell or auction the victims' belongings.

29. As a result of these threats and others, many victims ultimately paid the money that the defendants, together with others, demanded to ensure the return of the victims' possessions from the Fraudulent Moving Companies. Even when the victims gave in to the threats and paid the money demanded, their belongings were sometimes delivered weeks or months after the scheduled delivery dates, and valuable items were damaged or missing.

30. As a result of the fraudulent scheme, the defendants, together with others, wrongfully obtained more than $3,000,000 from more than 800 victims.

E. The Scheme to Falsely Register Great Movers and New City Movers

31. In or about and between January 2017 and August 2020, the defendant YAKOV MOROZ, together with others, took steps to hide his association with the various

motor carriers that he owned, operated and controlled, including by submitting forms to the FMCSA, on behalf of these motor carriers, that he knew contained false statements.

32. For example, on or about September 5, 2019, the defendant YAKOV MOROZ submitted a Form MCS-150 (Motor Carrier Identification Report) to the FMCSA, in which he reported that Arc Transport LLC would thereafter be known as Great Moving. In this form, MOROZ falsely stated, under penalty of perjury, that an individual named "Moye Gregory" was the sole proprietor, officer and partner of Great Moving. In fact, no one named "Moye Gregory" held any of those positions. Instead, MOROZ had sole control of Great Movers.

33. Additionally, on or about April 9, 2020, the defendant YAKOV MOROZ submitted a Form MCS-150 to the FMCSA, in which he reported that Mini Movers LLC would thereafter be known as New City Movers. In this form, MOROZ falsely stated, under penalty of perjury, that an individual named "Arthur Asel" was the sole proprietor, officer and partner of New City Movers. In fact, no one named "Arthur Asel" held any of those positions. Instead, MOROZ had sole control of New City Movers.

## COUNT ONE
(Conspiracy to Commit Wire Fraud)

34. The allegations contained in paragraphs one through 33 are realleged and incorporated as if fully set forth in this paragraph.

35. In or about and between January 2017 and August 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants YAKOV MOROZ, also known as "Koby" and "Yasha," ███████ KRISTY MAK, ANDRE PRINCE, also known as "Allen Parks" and "Aaron," and

12

KRISTEN SMITH, also known as "Sabrina," together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud one or more customers and potential customers of the Fraudulent Moving Companies, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate commerce, one or more writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNTS TWO AND THREE
(False Statements)

36. The allegations contained in paragraphs one through 33 are realleged and incorporated as if fully set forth in this paragraph.

37. On or about the dates listed below, within the Eastern District of New York and elsewhere, the defendant YAKOV MOROZ, also known as "Koby" and "Yasha," together with others, in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: the Federal Motor Carrier Safety Administration within the United States Department of Transportation, did knowingly and willfully make and use false writings and documents knowing the same to contain materially false, fictitious and fraudulent statements and entries, as set forth below:

| Count | Approximate Date | Document | False Statement/Entry |
|---|---|---|---|
| Two | September 5, 2019 | Form MCS-150 for Great Moving | Identity of sole proprietor, officer or partner. |
| Three | April 9, 2020 | Form MCS-150 for New City Movers | Identity of sole proprietor, officer or partner. |

(Title 18, United States Code, Sections 1001(a)(3), 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT ONE

38. The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count One, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

39. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____
FOREPERSON

_____
MARK J. LESKO
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#2020R00491
FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

vs.

YAKOV MOROZ, also known as "Koby" and "Yasha," ███ KRISTY MAK, ANDRE PRINCE, also known as "Allen Parks," and "Aaron," and KRISTEN SMITH, also known as "Sabrina," ███

Defendants.

## SUPERSEDING INDICTMENT

(T. 18, U.S.C., §§ 981(a)(1)(C), 1001(a)(3), 1349, 2 and 3551 *et seq.*;
T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____
Foreperson

*Filed in open court this* _____ *day,*

*of* _____ A.D. 20 ____

_____
Clerk

Bail, $ _____

*Devon Lash, Assistant U.S. Attorney, (718) 254-6014*
*Anna Karamigios, Assistant U.S. Attorney, (718) 254-6225*